IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TRUSTEES OF THE NATIONAL ASBESTOS
WORKERS MEDICAL FUND,

          Plaintiff,

v.                                        CIVIL ACTION NO.   2:12-cv-06449

SCOTT WILSON, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Plaintiff's Amended Motion for Default Judgment [Docket 20]. For the reasons stated below, the motion is **GRANTED in part** and **DENIED in part**. For the reasons stated below, the court **DIRECTS** the Clerk to enter default judgment in favor of the plaintiff in the amount of $87,901.15 plus post-judgment interest at the annual rate of 0.13%, computed daily pursuant to 28 U.S.C. § 1961.

**I. Background**

The plaintiff filed this action on October 10, 2012. The plaintiff alleged three counts: (1) "recoupment of employee benefits improperly paid" under ERISA (2) fraud, and (3) negligent misrepresentation. (*See* Compl. for Recoupment of Employee Benefits Improperly Paid, Fraud, and Negligent Misrepresentation ("Complaint") [Docket 1] ¶¶ 20-33). Specifically, the plaintiff alleged that the defendants misrepresented their marital status in order to obtain medical benefits from the National Asbestos Workers Medical Fund ("the Fund") for defendant Ashley Wilson.

(*See id.* ¶¶ 8-16). The plaintiff alleged that as a result of the defendants' fraud and negligent misrepresentation, the defendants were unjustly enriched in the amount of $87,901.15. (*See id.* ¶ 16).

Defendant Ashley Wilson was personally served on November 14, 2012. (*See* Proof of Service [Docket 5]). Defendant Scott Wilson was personally served on November 28, 2012. (*See* Proof of Service [Docket 6]). Each defendant was given twenty-one days to file an answer. On January 14, 2013, the plaintiff filed a motion for default [Docket 7], which was entered by the clerk on January 16, 2013 [Docket 8]. A copy of the clerk's entry of default was mailed to the defendants at their listed address, but the mail was returned as undeliverable. (*See* Dockets 9, 10). In the instant motion, the defendant requests entry of default judgment for the erroneously paid $87,901.15, plus attorney's fees, costs, and post-judgment interest. (*See* Pls.' Am. Mot. for Default J. [Docket 20], at 3). To date, the defendants have neither answered the Complaint nor responded to the plaintiff's Motion for Default Judgment [Docket 18] or Amended Motion for Default Judgment [Docket 20].

**II. Legal Standard**

District courts may enter default judgment under Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55(a), entry of default is warranted where "a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R. Civ. P. 55. After a default is entered by the clerk, a party may seek default judgment under Rule 55(b). "Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (citations omitted).

Where service is proper, if a party has "failed to plead or otherwise defend," that party is in default and the well-pleaded allegations in the complaint as to liability may be taken as true. *See* Fed. R. Civ. P. 55(a); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("[T]he defendant, by his default, admits plaintiff's well-pleaded allegations of fact[.]") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted)). However, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. Analysis

#### A. ERISA Claim

The plaintiff brings this suit pursuant to ERISA § 503(a)(3) as a fiduciary to an ERISA-covered employment welfare benefit fund. (*See* Mem. in Supp. of Pls.' Mot. for Default J., at 4). Under ERISA, "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." ERISA § 502(a)(3); 29 U.S.C. 1132(a)(3). The Supreme Court has held that "the term 'equitable relief' in § 502(a)(3) must refer to those categories of relief that were typically available in equity." *Great-White Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quotation omitted). Therefore, fiduciaries may not bring claims for damages under ERISA § 502(a)(3). *See id.*; *Bilyeu v. Morgan Stanly Long Term Disability Plan*, 683 F.3d 1083, 1091 (9th Cir. 2012) ("Under ERISA . . . a plan fiduciary . . . can only seek 'equitable relief' from a plan participant . . . . [Claimant] therefore cannot sue for damages under ERISA; it must show that it is seeking equitable relief.").

The plaintiff is permitted to seek restitution in equity under ERISA 502(a)(3). *See Knudson*, 534 U.S. at 213 (Under ERISA "a plaintiff could seek restitution *in equity*.") (emphasis in original). However, restitution in equity is "ordinarily in the form of a constructive trust or equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* Therefore, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* "[W]here the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant." *Id.* (quoting Restatement of Restitution § 215).

Here, the plaintiff alleges that the defendants fraudulently obtained funds that were paid out in the form of medical benefits. (Compl. [Docket 1] ¶ 16). The plaintiff does not claim to know the status of those funds, or whether those funds have been spent. Therefore, the plaintiff's claim is not one for restitution in equity, but for general damages. Accordingly, I **FIND** that the plaintiff cannot state a claim for equitable relief under ERISA § 502(a)(3), and the motion for default judgment with respect to the ERISA claim is **DENIED**.

### B. Fraud and Negligent Misrepresentation

According to the plaintiff's complaint, this court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367. (*See* Compl. [Docket 1] ¶ 1). Under that statute, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Although I find that the

4

plaintiff cannot state a claim under ERISA, I retain discretion to exercise jurisdiction over the remaining state law claims. *See* § 1367(c); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims."). Accordingly, I exercise jurisdiction over the remaining state law claims.

Before I address the merits of the plaintiff's state law claims, I must determine if they are preempted by ERISA. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). Although ERISA's preemption is expansive, it is not unlimited. *Custer v. Sweeney*, 89 F.3d 1156, 1166 (4th Cir. 1996). "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983). For example, the Supreme Court has noted that ERISA does not preempt "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988).

The Supreme Court has identified three instances where state laws "relate to" or have a "connection with" employee benefit plans and are therefore preempted by ERISA: "(1) laws that 'mandate[ ] employee benefit structures or their administration'; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) 'laws providing alternate enforcement mechanisms' for employees to obtain ERISA plan benefits."

5

*Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 342 (4th Cir. 2007) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658-59 (1995)). Further, courts must go "beyond the unhelpful text [of ERISA's preemption provision] and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Travelers*, 514 U.S. at 656.

The Fourth Circuit has held that "Congress did not intend to preempt 'traditional state-based laws of general applicability [that do not] implicate the relations among the traditional ERISA plan entities,' including the principals, the employer, the plan, the plan fiduciaries and the beneficiaries." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1469 (4th Cir. 1996) (quoting *Sweeney*, 89 F.3d at 1167 (employer's malpractice claim against insurance professionals not preempted)). Other federal appellate courts have come to the same conclusion, holding that ERISA does not preempt state laws that impose general obligations without relation or reference to employee benefit plans. *See, e.g.*, *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002) (state law fraudulent misrepresentation claim by plan trustee not preempted because plan participant had "a separate and distinct duty under Illinois tort law not to misrepresent his marital status on the claims form he submitted to the Fund"); *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 724 (9th Cir. 1997) (ERISA does not preempt claims arising from state laws "of general application, [that] do not depend upon ERISA, and do not affect the relationships between the principal ERISA participants"); *Geller v. Cnty. Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996) (allowing common law fraud claim to stand because it "in no way compromise[d] the purpose of Congress and [did] not impede federal control over the regulation of employee benefit plans").

The Seventh Circuit's *Biondi* opinion wrestled with facts very similar to those at issue here. In *Biondi*, the trustees of a benefit plan sued a participant for misrepresenting his marital status in order to improperly gain medical benefits for his ex-wife. 303 F.3d at 769. The trustees sought to recover $122,792.86 in improperly paid-out benefits and brought a common law fraud claim and a claim pursuant to ERISA. *Id.* at 770. Although the district court dismissed the ERISA claim, it granted judgment in favor of the trustees on their common law fraud claim. *Id.* at 771. The Seventh Circuit affirmed, rejecting the defendant's argument that ERISA preempted the common law fraud claim. *See id.* at 775-77. The court discussed the statutory purpose of ERISA and wrote that ERISA exists to protect the interests of plan participants and beneficiaries "by requiring the disclosure and reporting . . . of financial and other information . . . by establishing standards of conduct, responsibility, and obligation . . . and by providing for appropriate remedies, sanctions, and ready access to the Federal courts . . . and by improving the equitable character and the soundness of such plans." *Id.* at 774 (quoting 29 U.S.C. § 1001). With that in mind, and in light of the factors laid out in the Supreme Court's *Travelers* decision, the court stated that "far from thwarting ERISA's stated statutory objectives, the Trustees' common law fraud claim is an attempt to protect the financial integrity of the Fund, which is certainly in the Plan participants' and beneficiaries' best interests, as well as being consistent with the Trustees' fiduciary obligations under ERISA." *Id.* at 775. The fraud claim did not

> subject plan administrators and plan sponsors to conflicting directives among States or between States and the federal government, or create a potential conflict in substantive law requiring the tailoring of plan and employer conduct to the peculiarities of the law of each state. In sum, the Trustees' claim does not threaten in any way Congress's goal of national uniformity in the administration of ERISA plans. Finally, by no stretch of the imagination can the Trustees' claim be said to mandate employee benefit structures or their administration, or bind plan administrators to particular choices or preclude uniform administrative practices.

*Id.* at 775. Finally, the court determined that the fraud claim was not an alternative enforcement mechanism to ERISA's civil enforcement provisions, thus rendering it preempted: "Regardless of any contractual duties [the defendant] owed the Fund under the terms of the Plan, he had a separate and distinct duty under Illinois tort law not to misrepresent his marital status on the claims form he submitted to the Fund." *Id.* at 777.

Turning to the claims in this case, "[t]he essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." Syl. Pt. 2, *Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.*, 425 S.E.2d 144, 145 (W. Va. 1992) (quoting Syl. Pt. 2, *Muzelak v. King Chevrolet, Inc.*, 368 S.E.2d 710 (W. Va. 1988)). Making out a claim for negligent misrepresentation is very similar, but scienter not required: "One under a duty to give information to another, who makes an erroneous statement when he has no knowledge on the subject, and thereby misleads the other to his injury, is as much liable in law as if he had intentionally stated a falsehood." *Folio v. City of Clarksburg*, 655 S.E.2d 143, 151 (W. Va. 2007) (quoting Syl. Pt. 1, *James v. Piggott*, 74 S.E. 667 (W. Va. 1910)). Both fraud and negligent misrepresentation are claims of general applicability that arise separate from the existence of the Fund or ERISA. As in *Biondi*, these claims buttress ERISA's goals by protecting plans from the fraudulent actions of beneficiaries, and they do not conflict with the directives of other states or the federal government. Finally, these state law claims do not in any way bind, direct, or mandate a particular administration of an employee benefit plan. Accordingly, I **FIND** that the plaintiff's state law claims of fraud and negligent misrepresentation are not preempted by ERISA.

I now proceed to the merits of the plaintiff's state law claims. The plaintiff seeks damages in the amount of $87,901.15 to compensate for the amount fraudulently received in medical benefits by the defendants. I construe well-pleaded allegations as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Additionally, the plaintiff has attached to its motion a sworn declaration of Simone Rockstroh, the president of the company that administers the Fund.

According to the well-pleaded allegations, Ashley Wilson ceased being a beneficiary from the Fund upon her divorce from Scott Wilson on October 2, 2009. (*See* Compl. [Docket 1] ¶¶ 10-11). Although "the Fund's controlling document" required Scott Wilson to notify the Fund of his divorce, he failed to provide such notice. (*Id.* ¶¶ 12-13). Instead, on May 20, 2010, the Wilsons filed a document with the Fund's office certifying that they remained married. (*Id.* ¶ 14). On January 22, 2010, and December 24, 2010, the Wilsons filed notarized documents with the Fund seeking hardship distributions for Ashley Wilson and indicating that they remained married. (*Id.* ¶ 15). Between October 2, 2009, and December 6, 2011, the Fund paid out $87,901.15 in benefits for medical claims for Ashley Wilson.

The Complaint alleges that the Wilsons made the false statements about the status of their marriage knowingly and with the intent to induce the Fund to pay Ashley Wilson's medical expenses. (*See id.* ¶¶ 30-31). The Complaint further alleges that the Fund relied on the Wilsons' false statements and that this reliance was justified. (*See id.* ¶¶ 32-33).

Because the plaintiff alleges that the Wilsons' actions were intentional, and because I construe the well-pleaded allegations as true, I **FIND** that the plaintiff has proven a case for fraud. Therefore, the plaintiff's motion for default judgment is **GRANTED** with respect to the fraud claim.

9

### C. Costs and Fees

The plaintiff's counsel states that he has incurred $4,271.00 in attorney's fees and $747.26 in costs, totaling $5,018.26. (*See* Aff. in Supp. of Attorney's Fees [Docket 18-1]). The plaintiff moves for an award of costs and attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). That statute allows courts to award fees and costs in ERISA actions. Because the plaintiff failed to state an ERISA claim, I **FIND** that an award of fees or costs in this matter is inappropriate. Therefore, the motion for attorney's fees and costs is **DENIED**.

### IV. Conclusion

For the reasons stated above, the Amended Motion for Default Judgment [Docket 20] is **GRANTED in part** and **DENIED in part**. The court **DIRECTS** the Clerk to enter default judgment in favor of the plaintiff in the amount $87,901.15 plus post-judgment interest at the annual rate of 0.13%, computed daily pursuant to 28 U.S.C. § 1961.

The court further **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 28, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE